IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:17-cv-22375-COOKE/GOODMAN

VOIT TECHNOLOGIES, LLC,

     *Plaintiff*,

vs.

JC BATH CORPORATION,

     *Defendant*.

_____/

## PLAINTIFF VOIT TECHNOLOGIES, LLC'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

Plaintiff Voit Technologies, LLC ("Voit" or "Plaintiff"), files this responsive Memorandum in Opposition to Defendant JC Bath Corporation's ("JC Bath" or "Defendant") Motion for Judgment on the Pleadings [DE 24] ("Motion").

## I.    NATURE OF THE CASE

This Court should deny Defendant's Motion because it is premature since the claims of Voit's patent, U.S. Pat. No. 6,226,412 (the "'412 Patent"), have not been construed, and even Defendant alleges that several claim terms are unclear.  If the Court considers the Motion at this time, then it should be denied because the '412 Patent's claims are not directed to an abstract idea, and *in arguendo* assuming they are, they contain an inventive concept that would add significantly more to an abstract idea.

In its Motion, Defendant mischaracterizes and oversimplifies the '412 Patent's claims in an attempt to paint the claims as ineligible for patent protection under 35 U.S.C. § 101 and the two-part eligibility test set forth in *Alice Corp. v. CLS Bank International*, 134 S.Ct. 2347 (2014) ("*Alice*").  In reality, the '412 Patent's claims are not directed to an abstract idea, but instead are

1

directed to an improvement in computer technology, namely e-commerce platforms. Indeed, the claims are directed to a non-conventional and non-generic arrangement of method steps for managing an unconventional central relational database, using advanced digital data compression techniques to provide more realistic image rendition, rapid communication response time, and reduce server participation and communications costs – solutions that address computer-centric problems in the e-commerce arts unique to the Internet age. Whatever abstract ideas the claims allegedly involve are clearly secondary to the claims' computer-centric focus. Accordingly, the '412 Patent's claims are clearly eligible for patent protection under § 101 and *Alice*, and Defendant's Motion should be denied.

## II.   STATEMENT OF FACTS

Voit filed a Complaint for Patent Infringement [DE 1] ("Complaint") against Defendant for infringement of U.S. Patent No. 6,226,412 B1 (the "'412 Patent"). Specifically, Defendant infringed multiple computer implemented method claims of the '412 Patent through the use of certain e-commerce software and hardware to provide Defendant's website and online store. Compl. at 3. Defendant filed a responsive pleading wherein it: (i) denied the Complaint's allegations of patent infringement, *see* Answer & Aff. Defenses [DE 12] ("Answer"); (ii) asserted an affirmative defense of patent invalidity under § 101, amongst others, Answer; *see* Answer, and (iii) asserted a counterclaim for a declaratory judgment patent invalidity under § 101, amongst others, *see* Am. Counterclaim [DE 14]. Plaintiff has denied the material allegations contained in Defendant's Counterclaims, including the counterclaim for a declaratory judgment patent invalidity under § 101. 1st Am. Answer and Aff. Defenses to Def.'s Am. Counterclaims [DE 20].

This case is at an early stage.  No discovery or claim construction has occurred. Defendant even alleges that several claim terms are unclear at this stage.[1]  Despite these facts, Defendant seeks to have this case summarily adjudicated pursuant to Fed.R.Civ.P. 12(c). Specifically, Defendant incorrectly argues that the '412 Patent is invalid because it "describes a patent-ineligible abstract idea under 35 U.S.C. § 101[.]" *See* Motion at 7.  Defendant's Motion is premature, and Defendant is wrong regarding the nature of the '412 Patent.

The '412 Patent, which was filed in 1998 with a priority date of March 24, **_1995_**, contains a single independent claim, claim 1, and the remaining claims depend either directly or indirectly from claim 1.  Claim 1 recites the following specific and technical computer implemented method:

> 1. A method of buying and selling an item relating to unique subjects, comprising the steps of:
> a. providing at least one **uniquely identifiable remote data terminal**[2], for communicating with **a central computer managing a relational database** for a transaction between a buyer and a seller;
> b. entering the following at the at least one data terminals:
> textual information descriptive of a subject **in a structured fashion**, **including modifiable and non-modifiable data fields**, and image information representative of the subject;
> c. **data-compressing the image data into a first image format**;
> d. **separately transferring the textual and image data in the first format to the central computer by batch upload**, the following steps being **performed at the location of the central computer**;
> [i.] **determining which remote data terminals are authorized to transmit** subject oriented textual and image data, and storing information relating thereto;
> [ii.] receiving textual and image data from an authorized remote data terminal;

---

[1]    Defendant alleges in its Motion that: "[i]t is unclear if the inventor meant to further compress the image data compressed in clause c [of claim 1]", "[i]t is unclear what is meant by the term 'in relational form'", "[i]t is unclear what 'subject-related requests relating ot the transaction' means." *See* Motion at 22, 23.

[2]    All emphasis supplied unless otherwise noted.

[iii.] **creating a first set of unique records identifying the textual information associated with [e]ach subject received from each remote data terminal**;

[iv.] **creating a second set of unique records identifying the image data associated with each subject received from each remote data terminal**;

[v.] **storing the image data separately from the textual information in a data-compressed second image format**;

[vi.] **storing the textual information separately from the image data in relational form, along with information identifying the location of the separately stored image data corresponding thereto**;

[vii.] receiving subject-related requests relating to the transaction from at least one of the remote data terminals;

[viii.] locating textual information corresponding to the subject-related requests relating to the transaction when requested;

[ix.] transmitting the located textual information to the requesting remote data terminal; and

[x.] locating subject-related image data in response to the request when requested;

[xi.] **transmitting the related image data in a second data-compressed format**;

e. **de-compressing the images in the second data compressed format at the requesting remote data terminal**; and

f. displaying the de-compressed images along with textual information at the requesting remote data terminal.

'412 Patent at 11:5-54.

Defendant erroneously mischaracterizes and oversimplifies the '412 Patent's claims by claiming that they are only "directed to the abstract idea of displaying images and information about those images in a fashion that permits different sizes of the same image to be viewed by the user," and "merely describe[] a method of doing business."  Motion at 8 and 17.  First, ***only one of seventeen steps*** of method claim 1 is directed to the alleged abstract idea of "displaying."  *See* '412 Patent at 11:53-54 (step "f" of claim 1).  Second, the words "buy and sell" appear only twice in claim 1 – once in the preamble, which merely describes the use and purpose of the

4

claimed method, and is ***not*** a limitation[3], and again as a functional element describing the purpose of the "central computer managing a relational database," (i.e. "for a transaction between a buyer and a seller"). '412 Patent at 11:6, 10.  Significantly, "[c]laim [1] does not simply say: use the Internet to implement [buying and selling, or displaying images and text] between two computers. The preamble describes the use and purpose of the claimed computer [method]. The body of claim [1] specifies how the claimed computer program product accomplishes the solution of the '[412 Patent's] invention[.]" *Communique Lab., Inc. v. Citrix Sys.*, 151 F. Supp. 3d 778, 795 (N.D. Ohio 2015) (denying motion for summary judgment based on patent ineligibility under § 101, holding that when "[e]xamined as a whole, the specific features, steps, and limitations of claim 24 provide a specific solution to remote access problems that is necessarily rooted in computer technology, and thus constitute an inventive concept — something more than an abstract idea merely implemented on a generic computer") (citing *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1257 (Fed. Cir. 2014)).

Virtually all of the remaining terms of claim 1 are directed to and clearly focus on a specific improvement to computer functionality and how the claimed method accomplishes the solution to address problems necessarily rooted in computer technology.  Specifically, the body of claim 1 identifies how to create and manage an inventive and non-conventional "relational database" consisting of creating and managing specific data-file types and multiple of sets of unique records stored in a "relational form." *See supra* at 3-4 (quoting claim 1).  Examples of these steps are emphasized above where the language of claim 1 is reproduced.  *See supra* at 3.

---

[3]    A claim preamble will not be seen as limiting unless it "breathes life and meaning into the claim." *See In re Wertheim*, 541 F.2d 257 (CCPA 1976).  Clearly, the preamble of claim 1 is not a limitation since it does not breathe life and meaning into claim 1.

The dependent claims add additional limitations which are not abstract, and which contain inventive concepts beyond those recited in claim 1.

Significantly, the '412 Patent is directed to a non-conventional and non-generic arrangement of method steps for managing an unconventional central relational database, using advanced digital data compression techniques to provide more realistic image rendition, rapid communication response time, and reduce server participation and communications costs. The computer-centric problems unique to the internet-age, which the invention of the '412 Patent's claims solve, are discussed further below.

In light of the foregoing, the parties evidently disagree on the meaning of the claims and the general scope and nature of the '412 Patent, wherein Defendant alleges that several claim terms are unclear. Regardless, when construed in a light most favorable to Voit, the '412 Patent's claims are clearly directed to an improvement in computer technology.

## III.   ARGUMENT

### A.  Legal Standard

"Every issued patent enjoys a statutory presumption of validity." *InVue Sec. Prods. v. Mobile Tech, Inc.*, 3:15-cv-610, 2016 U.S. Dist. LEXIS 50371, at *4-7 (W.D.N.C. Apr. 14, 2016) (citing 35 U.S.C. § 282). As such, "[t]he burden of establishing invalidity of a patent or any of its claims rests on the party asserting invalidity." *Id.* Governing law "requires patent challengers to prove invalidity by clear and convincing evidence." *Tate Access Floors, Inc. v. Interface Architectural Res., Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002). The issue of patent eligibility under 35 U.S.C. § 101 presents a question of law. *See Accenture Global Servs., GmbH v. Guidewire Software, Inc.*, 728 F.3d 1336, 1340-41 (Fed. Cir. 2013).

Section 101 governs whether the subject of a claimed invention is eligible for patent protection: "[w]hoever invents or discovers any new or useful ***process***, machine, manufacture or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor." 35 U.S.C. § 101.  The Supreme Court has created three exceptions to Section 101: laws of nature, natural phenomena, and abstract ideas are not patent-eligible subject matter. *See Bilski v. Kappos*, 561 U.S. 593, 601 (2010).  While "abstract ideas are not patentable," *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1293 (2012), the Supreme Court explained "the concern that drives this exclusionary principle as one of pre-emption." *Alice*, 134 S. Ct. at 2354.  The Supreme Court then cautioned that courts should

> tread carefully in construing this exclusionary principle [that abstract ideas are not patentable] lest it swallow all of patent law.  At some level, all inventions [...] embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas.  Thus, an invention is not rendered ineligible for patent simply because it involves an abstract concept.  Thus, an invention is not rendered ineligible for patent simply because it ***involves*** an abstract concept.

*Id.*

The evaluation for "distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" is a two-step test. *Id.* at 2355 (citing *Mayo*, 132 S. Ct. at 1296-97).   The first step of the *Alice/Mayo* test is determining whether the claims at issue are directed to one of the three exceptions. *Alice*, 134 S. Ct. at 2355.  The first step of the *Alice* test "cannot simply ask whether the claim[] involve a patent-ineligible concept," but should instead focus on whether the claim as a whole is directed to ineligible subject matter. *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335 (Fed. Cir. 2016) (emphasis added).  If the Court determines the claims are directed to an abstract idea, step two entails meticulously evaluating the elements of the claims and searching for an "inventive concept," which, when found, establishes the claims as patent-eligible. *See Alice*, 134 S. Ct. at

2355. Step two requires the Court to "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (quoting *Mayo*, 132 S. Ct. at 1298, 1297). A patentee may satisfy either step of the *Alice/Mayo* test to defeat a Section 101 challenge. *Id.*

Further, the Court should not consider Defendant's invalidity arguments prior to a claim construction hearing, if the record before it does not allow for "a full understanding of the basic character of the claimed subject matter," as is the case here where the parties disagree on claim terms, and even Defendant alleges several claim terms are unclear. *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012); *see also zIT Consulting GmbH v. BMC Software, Inc.*, 6:15-cv-1012, 2016 U.S. Dist. LEXIS 5346, at *13-14 (M.D. Fla. Jan. 15, 2016) (performing § 101 analysis before plaintiff had even submitted a claim construction "would result in a colossal waste of judicial resources"). However, should the Court decide to consider the Motion, it must construe the claims in a "manner most favorable to plaintiff." *See Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1349 (Fed. Cir. 2014).

In considering a motion for judgment on the pleadings under Rule 12(c), the court is generally limited to the pleadings. *See Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1255 (11th Cir. 2010); *see also* Fed. R. Civ. P. 12(d) (applying the same standard to consideration of matters outside the pleadings in both the Rule 12(c) and Rule 12(b)(6) contexts). However, "if, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see Benchmark Elecs., Inc. v.*

*J.M. Huber Corp.*, 343 F.3d 719, 726 (5th Cir. 2003) (holding that the district court plainly erred in treating the defendant's motion for judgment on the pleadings as a motion for summary judgment without allowing discovery, noting that the plaintiff was "deprived of a full and fair opportunity to defend against summary judgment"), *modified on other grounds on denial of reh'g by* 355 F.3d 356 (5th Cir. 2003).  Regardless, when construed in a light most favorable to Voit, the claims of the '412 Patent are patent-eligible under the correct analyses of either step in the *Alice/Mayo* test, and, therefore, Defendant's Motion should be denied.

### B.  Defendant's Motion Is Premature And Should Be Denied Because There Are Disputed Claim Constructions At-Issue

Defendant's Motion is premature and should be denied because the parties clearly dispute the meaning of claim terms, and the scope and nature of the '412 Patent itself.  The Federal Circuit instructs that although "claim construction is not an inviolable prerequisite to a validity determination under § 101 [...] ***it will ordinarily be desirable—and often necessary***—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter." *Bancorp*, 687 F.3d at 1273-74.  Numerous courts have found claim construction and additional factual development necessary to resolution of the invalidity question.[4]  Thus, the Court should not

---

[4]  *See, e.g.*, *InVue Sec. Prods.*, 2016 U.S. Dist. LEXIS 50371, at *8-9 (denying motion to dismiss under §101 and *Alice* where "the parties dispute the nature and scope of the claims, the construction of the claims, and the basic character of the patents," and thus the facts "must be more fully developed before the court can conclusively determine Defendant's invalidity contentions"); *zIT Consulting*, 2016 U.S. Dist. LEXIS 5346, at *13-14; *StoneEagle Servs., Inc. v. Pay-Plus Solutions, Inc.*, 8:13-cv-2240-T-33MAP, 2015 U.S. Dist. LEXIS 15144, at *8 (M.D. Fla. Feb. 9, 2015) (denying motion to dismiss on § 101 grounds as "premature" where, inter alia, the record was not fully developed and the parties disputed the basic character of the claimed subject matter); *Nomadix, Inc. v. Hospitality Core Servs. LLC*, 14-cv-08256, 2015 U.S. Dist. LEXIS 44335, at *4 (C.D. Cal. Apr. 3, 2015) (denying § 101 argument on motion to dismiss because "[a]though the [c]ourt has the patents in question before it right now ... the exact functioning of the patented systems has not yet been fully briefed."); *WAG Acquisition, LLC v.*

9

consider Defendant's invalidity arguments prior to a claim construction hearing, if the record before it does not allow for "a full understanding of the basic character of the claimed subject matter." *Bancorp*, 687 F.3d at 1273-74.

In this case, there are numerous disputes regarding the scope and nature of the claims, and the number and complexity of these disputes are likely to increase as the case progresses.[5] In its Motion, Defendant erroneously misconstrues and oversimplifies the '412 Patent's claims by claiming that they are only directed to an abstract idea. Further, Defendant either offers no evidence supporting its speculative constructions,[6] or offers alleged extrinsic evidence that Defendant failed to attach to its Motion[7] and which would nevertheless fall outside the Court's scope of consideration under a Rule 12(c) motion. On the other hand, Voit construes the claims such that virtually all of the terms of claim 1 are directed to and clearly focus on a specific improvement to computer functionality and how the claimed method accomplishes the solution to address problems necessarily rooted in e-commerce computer technology.

Here, "the court cannot fairly apply *Alice* [...] by attempting to conjure up all plausible claim constructions at this pleadings stage in the absence of stipulated constructions or at least

---

*Multi-Media, LLC*, 14-cv-1661, 2015 U.S. Dist. LEXIS 121028, at *17 (D.N.J. Sept. 10, 2015) ("Because resolving the parties' disputes about the basic character and meaning of the claims requires claim construction, Defendants' motion to dismiss under § 101 is denied").

[5]   For example, in a prior case where infringement of the '412 Patent was at issue, *VOIT Techs., LLC v. Drucker Labs, LP*, 4:16-cv-00695-ALM (E.D. Tex. 2016), the parties disputed 10 claim terms. *See* Joint Claim Construction and Pre-Hearing Statement from the *Drucker Labs* case attached hereto as Exhibit "A."

[6]   *See, e.g.*, Mot. at 22 ("'In a relational form' ***could*** mean showing a connection between image and text data"); Mot. at 17 ("'Data fields' means a computer record or subdivision thereof, where data can be entered or stored" (no supporting citation)); Mot. at 18 ("'central computer' means server" (no supporting citation)); Mot. at 20 ("'creating records' is an abstract concept" (no supporting citation)); Mot. at 23 ("clause d.8 ***could*** describe requests made by subject"); *id.* ("[t]his is equivalent as locating information on a database" (no supporting citation)).

[7]   Defendant's Motion cites to several exhibits, including some that apparently contain textbook excerpts. *See, e.g.* Mot. at 16 n.5, 17 n.6. However, none of these exhibits were attached to the Motion, and Voit cannot verify their contents.

Plaintiff's proposed constructions of its own patent." *InVue Sec. Prods.*, 2016 U.S. Dist. LEXIS 50371, at *8-11.  Such an endeavor "would result in a colossal waste of judicial resources." *zIT Consulting GmbH*, 2016 U.S. Dist. LEXIS 5346, at *14 (denying motion to dismiss under § 101 as premature since the defendant raised its § 101 arguments before plaintiff's claim construction proposal deadline, and the shotgun format of the complaint and defendant's challenge to the claims would result in an analysis of each of the claims in a piecemeal fashion).  Indeed, "the record in this case is far from developed and additional discovery would aid in the decision-making process.  The Court would also benefit from additional briefing as to the exact nature and functioning of the paten[t] at-issue in this case." *InVue Sec. Prods.*, 2016 U.S. Dist. LEXIS 50371, at *10.  Thus, "a granting of Defendant's Motion to Dismiss would be premature" because "claim construction is necessary in order to determine Defendant's Motion." *Id.* (citing *WAG Acquisition, LLC v. Multi-Media, LLC*, 14-cv-1661, 2015 U.S. Dist. LEXIS 121028, at *17 (D.N.J. Sept. 10, 2015)).  Accordingly the Motion should be denied as premature.

### C.  The '412 Patent is Valid Under 35 U.S.C. § 101

Even if the Court considers the Motion, the Motion should be denied because the Patent claims patent-eligible subject matter and is, therefore, valid under § 101.  The *Alice/Mayo* analysis begins and ends with the claim language informed by the specification.  *See, e.g., Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1376 (Fed. Cir. 2015).  And, a court must evaluate the claims "in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015).

A recent case from the District of Delaware describes the task accordingly:

[T]he claims (informed by the specification) must describe a problem and solution rooted in computer technology, and the solution must be (1) specific

enough to preclude the risk of pre- emption, and (2) innovative enough to "override the routine and conventional" use of the computer.

*SRI Int'l, Inc. v. Cisco Sys., Inc.*, 179 F. Supp. 3d 339, 353 (D. Del. 2016) (citing *DDR Holdings,* 773 F.3d at 1258-59).

### 1. The '412 Patent is Not Directed to an Abstract Idea (*Alice/Mayo* Step One)

Defendant's mischaracterization of Claim 1 as being directed to the allegedly abstract ideas of displaying images and buying and selling products is a mischaracterization of the actual claim language and its limitations. The Federal Circuit recently admonished against such practice: "[D]escribing the claims at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule." *Enfish*, 822 F.3d at 1337 (quoting *Alice*, 134 S. Ct. 2354).

Indeed, the claims of the '412 Patent describe a specific, appropriately limited invention. Take, for example, steps (c) through (e) of claim 1. *See* Claim 1 *supra*. The specific computer implemented method steps detailed by Claim 1 is a technological solution well within the "technological arts test" described by Federal Circuit Judge Mayer. *See Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 721 (Fed. Cir. 2014) ("[*Alice*] for all intents and purposes, set out a technological arts test for patent eligibility. Because the purported inventive concept in Ultramercial's asserted claims ***is an entrepreneurial rather than a technological one***, they fall outside section 101.") (Mayer, J., concurring).

In addition to Defendant's intentionally broad, non-technical, bird's-eye-view mischaracterization of Claim 1, the case law on which Defendant relies is unpersuasive and inapposite. The two Supreme Court cases Defendant cites, *Bilski* and *Alice*, both involved financial planning. *Bilski* involved a patent that claimed "a procedure for instructing buyers and sellers how to protect against the risk of price fluctuations" and included a "series of steps

instructing how to hedge risk." *Bilski*, 561 U.S. at 598, 599. *Alice*, likewise, involved a patent

on the concept of using "a third party to mitigate settlement risk." *Alice*, 134 S. Ct. at 2356. In

both cases, the patents at issue claimed "a fundamental economic practice long prevalent in our

system of commerce," and, unlike the '412 Patent, were devoid of any specific computer centric

steps, such as specific steps directed to creating a relational database, implementing specific

multi-format data compression schemes, and creating multiple sets of unique records managed in

a unique way specific to the implementation of the '412 Patent's technical solution. *Id.* (quoting

*Bilski*, 561 U.S. at 611).

The Federal Circuit cases Defendant cites are also not analogous. Notably, in *BuySAFE,*

*Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014), the Federal Circuit analogized that patent to

the "fundamental economic practice[s]" at issue in *Alice* and *Bilski*. *See id.* at 1354-55. The

representative claim in *BuySAFE* was:

> 1. A method, comprising:
>
> receiving, by at least one computer application program running on a computer of a safe transaction service provider, *__a request from a first party for obtaining a transaction performance guaranty service with respect to an online commercial transaction following closing of the online commercial transaction__*;
>
> processing, by at least one computer application program running on the safe transaction service provider computer, the request *__by underwriting the first party in order to provide the transaction performance guaranty service to the first party__*,
>
> *__wherein the computer of the safe transaction service provider offers, via a computer network, the transaction performance guaranty service that binds a transaction performance guaranty to the online commercial transaction involving the first party to guarantee the performance of the first party following closing of the online commercial transaction__*.

*Id.* at 1352.

Unlike claim 1 of '412 Patent, which refers to "buying" and "selling" in only two off-

hand instances to merely describe the *__purpose__* of the claimed invention, it is readily apparent that

creating a contractual guarantee was the *__focus__* of the ineligible claims in *BuySAFE*.

Accordingly, the Court in *BuySAFE* held that creating contractual guarantees was not patent-eligible: "The claims are squarely about creating a contractual relationship – a 'transaction performance guaranty.'" *Id.* at 1355.  That the age-old process was made easier through the use of computers did not change the fact the patent claimed the abstract idea of establishing guarantee contracts.  *See id.*  Like *Alice* and *Bilski*, the *BuySAFE* patents covered abstract plans related to doing business, i.e., mediating settlement risk, hedging investment risk, and establishing performance guarantee contracts, respectively; and those practices did not become a patentable invention because they started using computers to conduct business more efficiently. *See id.*; *Bilski*, 561 U.S. at 611; *Alice*, 134 S. Ct. at 2356.

*In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607 (Fed. Cir. 2016), is also not analogous.  Although the claims at-issue in *In re TLI* involve "recording," "storing," and "transmitting" "digital images", that is all they share with the highly technical and specific computer-centric claims of the '412 Patent.  Specifically, the claim at-issue in *In re TLI* states:

> 17. A method for recording and administering digital images, comprising the steps of:
>> ***recording images*** using a digital pick up unit in a telephone unit,
>> ***storing the images*** recorded by the digital pick up unit ***in a digital form as digital images***,
>> ***transmitting data including at least the digital images and classification information to a server***, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images,
>> ***receiving the data by the server***,
>> ***extracting classification information*** which characterizes the digital images from the received data, and
>> ***storing the digital images in the server, said step of storing taking into consideration the classification information***.

*Id.* at 610.  The *TLI* court found the claims were directed to the use of conventional or generic technology in a well-known environment without indicating that the claims solved a problem presented by combining the two.  *Id.* at 612-13.  The *TLI* court went onto state that while the

claimed invention "'controls the image resolution of the digital images; using known image compression techniques, […] and it 'controls the transmission rate during transmission of the data via the transmission system,' […] [s]uch vague, functional descriptions of server components are insufficient to transform the abstract idea into a patent-eligible invention." *Id* at 615. Unlike the claims in *TLI*, claim 1 of the '412 Patent recites numerous specific non-conventional and non-generic computer-centric steps, which, as discussed below, solve problems rooted in computer technology and unique to the internet-age, such as:

> […]data-compressing the image data into a first image format;
> d. separately transferring the textual and image data in the first format to the central computer by batch upload, the following steps being performed at the location of the central computer;
> [i.] determining which remote data terminals are authorized to transmit […]
> [iii.] creating a first set of unique records identifying the textual information associated with [e]ach subject received from each remote data terminal;
> [iv.] creating a second set of unique records identifying the image data associated with each subject received from each remote data terminal;
> [v.] storing the image data separately from the textual information in a data-compressed second image format;
> [vi.] storing the textual information separately from the image data in relational form, along with information identifying the location of the separately stored image data corresponding thereto;
> […]
> [xi.] transmitting the related image data in a second data-compressed format;
> e. de-compressing the images in the second data compressed format at the requesting remote data terminal […]."

*See* Claim 1 of the '412 Patent.

Defendant forces another case, *Intellectual Ventures I, LLC v. Erie Indem. Co.*, 850 F.3d 1315 (Fed. Cir. 2017), into its purported analysis in an attempt to broaden the scope of abstract idea jurisprudence. *See* Mot. at 22-23. The Federal Circuit determined that claims for "a method for creating a database and an index to search the database" were directed to an abstract idea

because "[t]his type of activity […] includes longstanding conduct that existed well before the advent of computers and the Internet." *Intellectual Ventures*, 850 F.3d at 1327. In that case, the court supported its conclusion because the invention could have been practiced in a brick and mortar setting, "[f]or example. A hardcopy-based classification system (such as [a] library-indexing system) employs a similar concept[.]" *Id*. Unlike *Intellectual Ventures*, the '412 Patent's claimed invention cannot be practiced in a brick and mortar or pen and paper setting, as explained below.

Defendant cites to additional cases in its piecemeal analysis of claim 1's individual elements, however none of those cases are factually similar to the present case. Accordingly, none of *Bilski*, *Alice*, *BuySAFE, TLI, Intellectual Ventures*, or any of the other cases cited by Defendant provide factual guidance for the § 101 analysis of the '412 Patent's claims.

Indeed, the '412 Patent's method claims teach specific technological processes using specific hardware and software configurations to record, store, and display images, as well as converting analog images to digital data, and modifying such data to affect the method in which a person can view the images. This is a case where the "elements of the method described in the [patent] are not merely what a computer does; they are a specific procedure that is done by a computer." *ART+COM Innovationpool GmbH v. Google Inc.*, 183 F. Supp. 3d 552, 560 (D. Del. 2016). This is patent eligible subject matter. *Id.*

Defendant also summarily concludes that the claimed method "can be accomplished […] simply by using flash cards and photographs of different sizes along with paper and manual writing implements such as pens and pencils." Mot. at 6, 15. However, Defendant does not even attempt to explain ***how*** a human could use such pre-Internet era tools to perform the claimed method. Even if Defendant could conjure up an alleged explanation, Defendant's apparent

"brick-and-mortar" analogy would nevertheless fail against the '412 Patent. *See DDR Holdings*, 773 F.3d at 1258; *Intellectual Ventures*, 100 F. Supp. 3d at 383 ("Another helpful way of assessing whether the claims of the patent are directed to an abstract idea is to consider if all of the steps of the claim could be performed by human beings in a non-computerized 'brick and mortar' context."). Judge Andrews, for the District of Delaware, recently determined that a patent that "describes a software-implemented method for providing a 'pictorial representation of space-related data, particularly geographical data of flat or physical objects,'" was drawn to eligible subject matter. *ART+COM*, 183 F. Supp. 3d at 554, 560. The court determined the claims amounted to significantly more than the underlying idea and upheld the validity of the patent over the defendant's objections that persons could perform the method in a library with atlases and maps. *Id*. at 557. The patentee argued that the analogy was "flawed since a librarian would not permit a library guest to cut apart maps," and the Court upheld the claims. *Id.*

Similarly, the method claims of the '412 Patent could not be "performed in the human mind or by a human using a pen and paper." *Versata Dev. Grp., Inc. v. SAP Am., Inc.*, 793 F.3d 1306, 1333 (Fed. Cir. 2015). If a retailer set up a network of human sentries to handle the exchange of images and text between remotely located humans, none of those "human remote data terminals" and "human central computers" could, for example, digitize, i.e., convert an analog image signal into digital data of what he or she viewed and compress the digital data into multiple formats, nor could he or she "separately transfer the textual and image data in the first format by batch upload," or store the text and images of what he or she saw "separately in relational form along with information identifying the location of the separately stored data", "de-compress the images into the second data compressed format," or display to another person what he or she saw, and certainly not while "managing a relational database." *See* Claim 1 of the

17

'412 Patent. Defendant's analysis glosses over the specific hardware and technological processes present in the '412 Patent's claims.

Claim 1 of the '412 Patent is analogous to those found patent-eligible in *DDR Holdings*, *Enfish*, and *McRO, Inc. v. Bandai Namco Games Am. Inc*., 837 F.3d 1299 (Fed. Cir. Sept. 13, 2016). The representative claim in *DDR Holdings* was directed to:

> 13. An e-commerce outsourcing system comprising:
> a data store including a look and feel description associated with a host web page having a link correlated with a commerce object; and
> a computer processor coupled to the data store and in communication through the Internet with the host web page and programmed, upon receiving an indication that the link has been activated by a visitor computer in Internet communication with the host web page, to serve a composite web page to the visitor computer wit[h] a look and feel based on the look and feel description in the data store and with content based on the commerce object associated wit[h] the link.

*DDR Holdings*, 773 F.3d at 1249.

Comparing the claims to other "abstract idea" cases the *DDR* court stated "these claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id.* at 1257. The court went on to state:

> [t]o be sure, the '399 patent's claims do not recite an invention as technologically complex as an improved, particularized method of digital data compression [such as Claim 1 of the '412 Patent]. But nor do they recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet, or creating or altering contractual relations using generic computer functions and conventional network operations, such as the claims in *Alice, Ultramercial, buySAFE, Accenture, and Bancorp*. The claimed system, though used by businesses, is patent-eligible under § 101.

*Id.* at 1259. Similar to the invention in *DDR*:

> [t]he invention [of claim 1] utilizes a client/server architecture applied to a ***central relational database***, ***using advanced digital data compression*** [i.e. 'an improved,

18

particularized method of digital data compression'] to provide [more] ***realistic image rendition and rapid communication response time***.  In addition, image capture is performed on a non-interactive basis insofar as the central database server, ***so as to minimize server participation and communications costs***.

'412 Patent at 1:61-66.  The solutions resulting from the invention of claim 1, namely improved image rendition and response time, and reduced server participation and communication costs, undoubtedly and specifically arise in the realm of computer networks and technology.

Further, in *DDR Holdings*, the Federal Circuit held the relevant claims were patent-eligible under § 101 because "the claims at issue do not attempt to preempt every application of the idea."  *DDR Holdings*, 773 F.3d at 1259.  Akin to *DDR Holdings*, claim 1 does not preempt every application of text and image compression, transmission, and presentation, nor does it preempt every e-commerce platform or method.  *See* '412 Patent at 11:62-12:10.  Rather, claim 1 claims an appropriately narrow method to use a certain type of e-commerce method in a limited context.

In *Enfish*, the representative claim was directed to:

> [Claim 17:] A data storage and retrieval system for a computer memory, comprising:
> means for configuring said memory according to a logical table, said logical table including:
> a plurality of logical rows, each said logical row including an object identification number (OID) to identify each said logical row, each said logical row corresponding to a record of information;
> a plurality of logical columns intersecting said plurality of logical rows to define a plurality of logical cells, each said logical column including an OID to identify each said logical column; and
> means for indexing data stored in said table.

*Enfish*, 822 F.3d at 1336.

In analyzing the claims of *Enfish*, the Federal Circuit noted that "the first step in the *Alice* inquiry in this case asks whether the focus of the claims is on the specific ***asserted improvement in computer capabilities (i.e., the self-referential table for a computer database***) or, instead, on

19

a process that qualifies as an "abstract idea" for which computers are invoked merely as a tool."

*Id.* at 1335-36.  To which the court answered:

> we find that the claims at issue in this appeal are not directed to an abstract idea within the meaning of *Alice*. Rather, they are directed to a specific improvement to the way computers operate, embodied in the self-referential table."  *Id* at 1336. In this case, claim 1 is not directed to a fundamental economic practice, but rather a computer implemented method focused on a "relational database" and associated method steps regarding its use, which is analogous to the "self-referential table" of *Enfish*, in that it embodies "a specific improvement to the way computers operate.

*Id*.

Defendant also incorrectly argues that claim 1 is directed to an abstract idea because it contains "references to […] general equipment used to buy and sell products on the internet." Am. Counterclaim at 10.  The fact that the method of claim 1 is allegedly capable of being performed on general equipment is not problematic.  Indeed, "[t]he claimed process uses a combined order of specific rules that renders information into a specific format that is then used and applied to create desired results […] While the result may not be tangible, there is nothing that requires a method 'be tied to a machine or transform an article' to be patentable."  *McRO,* 837 F.3d at 1315 (citing *Bilski*, 561 U.S. at 603 (discussing 35 U.S.C. § 100(b))).  "The concern underlying the exceptions to § 101 is not tangibility, but preemption." *Id*.  "Here, the structure of the limited rules reflects a specific implementation not demonstrated as that which any [e-commerce service provider] engaged in the search for [an e-commerce method and platform] would likely have utilized." *Id*. (quotation marks and citations omitted).  "Claim 1 of the '[412] patent, therefore, is not directed to an abstract idea." *Id*.

In sum, the '412 Patent is a non-abstract invention rooted in computer technology that is not practicable or replicable within the human mind or in a hypothetical "brick and mortar"

construct without computer innovations.  It is directed to patent-eligible subject matter sufficient to satisfy step one of the *Alice/Mayo* test.  Therefore, Defendant's Motion should be denied.

### 2.  The '412 Patent Embodies an Inventive Concept (*Alice/Mayo* Step Two)

The '412 Patent is not directed to an abstract idea, and, therefore, the inquiry rightfully stops at *Alice/Mayo* step one.  Nevertheless, if the Court were to reach step two, the '412 Patent embodies an "inventive concept […] that amounts to significantly more than a patent upon [an abstract idea] itself."  *See Alice*, 134 S. Ct. at 2355 (quoting *Mayo*, 132 S. Ct. 1289).

#### a.  Defendant's *Alice* Step Two Analysis Fails

Step two of the *Alice* analysis requires that the elements of a claim be considered both individually ***and*** "***as an ordered combination***."  *Alice*, 134 S.Ct. at 2355.  However, Defendant's analysis under step 2 of the *Alice* analysis fails since it considers the elements of claim 1 individually ***only***, and ***not*** as an 'ordered combination,' as required.  Indeed, the bulk of Defendant's Motion is dedicated to a piecemeal analysis of claim 1's ***individual*** elements only.  *See generally* Mot.  Nowhere does Defendant consider the claim 1's elements as an ordered combination.  Accordingly, Defendant's *Alice* step two analysis fails in this regard alone.  Regardless, the '412 Patent embodies an inventive concept amounting to significantly more than any abstract idea, as explained below.

#### b.  The '412 Patent's Claims Contain "Inventive Concepts" Above and Apart from any Underlying Ideas

"A software patent can be eligible under § 101 when it claims a solution to a problem necessarily rooted in computer technology, and does not merely recite a conventional business or economic practice known from a pre-internet world that is simply implemented on a generic computer performing generic computer functions."  *Communique Lab., Inc. v. Citrix Sys.*, 151 F. Supp. 3d 778, 793 (N.D. Ohio 2015) (citing *DDR Holdings*, 773 F.3d at 1259).  This is clearly

the case with the '412 Patent, which is ultimately directed to providing a technological solution

for a technological problem "necessarily rooted in computer technology."  *See DDR Holdings*,

773 F.3d at 1257.  The '412 Patent describes the technical challenges facing the industry at the

time of invention.  Consider the following excerpts from the '412 Patent:

> Various systems have been proposed for accessing text and image information associated with catalog type sales, wherein each listed item is advertised in terms of desired quantities, qualities, and so forth. Updates to such systems are done on an occasional or seasonal basis, as new products are added and older products are removed. **While some searching of the database may be possible, it is generally limited to the different styles, colors, etc., of products manufactured in large quantities**.

'412 Patent at 1:25-34.

> The system architecture of Bijnagte **is limited to that of the host-terminal, however, and all transactions, including picture scanning, are performed on an on-line, interactive basis. Images are limited to 8-bit color and a maximum of sixteen in number, and are further limited in size to dimensions in pixels of 128x100 (approximately¼ screen at relatively low resolution), and data compression is limited to approximately 2:1**, which is characteristic of "loss-free" compression in which there is no actual reduction in the amount of data**. In addition, only limited means are included to prevent unauthorized access or modification of records**.

*Id*. at 1:39-49.

> This is distinct from the ['412 Patent's] prior parent application **where only both textual and image or text alone could be retrieved**.

*Id.* at 6:17-19 (referring to the '412 Patent's parent application).

> The '412 Patent aimed to solve these technical problems, for example:

> The invention utilizes a client/server architecture applied to a central relational database, using advanced image data compression to ***provide realistic image rendition and rapid communication response time***. In addition, image capture is performed on a non-interactive basis insofar as the central database server, ***so as to minimize server participation and communications costs***. All text and image data is processed within respective remote client computers, ***permitting the central relational database to be rapidly updated in a single series of transactions***. In one aspect, batch uploading is used.

22

*Id.* at 1:61-2:3.

> The system may make advantageous use of different image data compression formats for the various users and sources. In one embodiment, a first format may be used for the locally stored images, a second format may be used for images transmitted from a remote site to the central computer database, and a third format may be used for images transmitted from the central computer database to a remote site. ***As such, locally stored images could not be transmitted or transferred by magnetic disc or other media to any other remote site unless routed through the central computer, at which time the images are reformatted and retransmitted***.

*Id.* at 2:20-30.

> In one aspect, the descriptive records for the specific items which are stored in the relational database file server may be independently retrieved while the associated images are stored in the image file server 40. ***Likewise, images which are stored in the image file server 40 may be independently retrieved while the associated descriptive records are stored in the relational database file server*** 30. This is distinct from the ['412 Patent's] prior parent application where only both textual and image or text alone could be retrieved.

*Id.* at 6:10-19.

The challenged claims in this case should be viewed in light of the specification. *See Ariosa Diagnostics*, 788 F.3d at 1376. And with these considerations in mind, the language of the claims is "significantly more than a patent upon [an ineligible] concept itself." *See Internet Patents*, 790 F.3d at 1347. Whether considered individually or as an "ordered combination," these claims are a patent-eligible application under *Alice*. *See Alice*, 134 S. Ct. at 2355.

Defendant's attempt to analogize claim 1 of the '412 Patent to those invalidated in *Alice, Bilski, BuySafe, TLI*, and *Intellectual Ventures*, and other cases also fail. As discussed above, the claims in those cases are worlds apart from the claims of the '412 Patent. *See* discussion *supra* in section III(C)(1). Instead one must "begin, then, with an examination of eligible and ineligible claims of a ***similar nature*** from past cases." *Amdocs (Isr.) Ltd. v. Openet Telecom*, Inc., 841 F.3d 1288, 1295 (Fed. Cir. 2016).

As discussed above, the claims of the '412 Patent are of a similar nature to those found in the *DDR Holdings* case, wherein the court found the claims at-issue to be eligible under step 2[8] of the *Alice/Mayo* test because the claims "include additional features that ensure the claims are more than a drafting effort designed to monopolize the abstract idea." *DDR Holdings*, 773 F.3d at 1259. And thus, "the claimed solution amounts to an inventive concept for resolving this particular Internet-centric problem, rendering the claims patent-eligible." *Id*.  Similarly, the claims of the '412 Patent do not create a monopoly on buying and selling products online, rather, the claims are directed to an appropriately narrow method to use a certain type of e-commerce method in a limited context.

Further, the claims of the '412 are similar to those found eligible under step 2 of the *Alice/Mayo* test in *Amdocs*.  The representative claim in *Amdocs* reads:

> 1.      ('065 patent) A computer program product embodied on a computer readable storage medium for processing network accounting information comprising:
> computer code for receiving from a first source a first network accounting record;
> computer code for correlating the first network accounting record with accounting information available from a second source; and
> computer code for using the accounting information with which the first network accounting record is correlated to enhance the first network accounting record.

*Amdocs*, 841 F.3d at 1299.

The court held that "this claim entails an unconventional technological solution (enhancing data in a distributed fashion) to a technological problem (massive record flows which previously required massive databases). The solution requires arguably generic components, including network devices and 'gatherers' which 'gather' information. However, the claim's

---

[8]    While the *DDR Holdings* court found the claims where not directed to an abstract idea eligible under step 1, they nevertheless proceeded to step 2 to address concerns set forth in the dissent.  *See DDR Holdings*, 773 F.3d at 1257.

enhancing limitation necessarily requires that these generic components operate in an unconventional manner to achieve an improvement in computer functionality." *Id.* at 1300-01. Similarly, as explained above, claim 1 of the '412 Patent, which requires alleged "generic components" of a "remote data terminal" and "a central computer managing a relational database", also necessarily requires that such components operate in "an unconventional manner that achieves an improvement in computer functionality," i.e. the technical and specific computer centric method steps set forth in elements d.[i.-xi] of claim 1. *Id.*; *see* discussion *supra* in section III(C)(1) regarding the unconventional nature of the method steps, and how they improve computer functionality.

Lastly, for purposes of the *Alice* step 2 analysis, the claims of the '412 Patent are similar to those set forth in *Bascom Global Internet Servs. v. AT&T Mobility LLC*, 827 F.3d 1341 (Fed. Cir. 2016). The representative claim in *Bascom* reads:

> [Claim 1:] A content filtering system for filtering content retrieved from an Internet computer network by individual controlled access network accounts, said filtering system comprising:
> a local client computer generating network access requests for said individual controlled access network accounts;
> at least one filtering scheme;
> a plurality of sets of logical filtering elements; and
> a remote ISP server coupled to said client computer and said Internet computer network, said ISP server associating each said network account to at least one filtering scheme and at least one set of filtering elements, said ISP server further receiving said network access requests from said client computer and executing said associated filtering scheme utilizing said associated set of logical filtering elements.

*Bascom*, 827 F.3d at 1345. While the court found the claim at-issue to be directed to an abstract idea (unlike claim 1 of the '412 patent), the court found the claimed eligible under step 2. The court emphasized that "[t]he inventive concept inquiry requires more than recognizing that each claim element, by itself, was known in the art […] an inventive concept can be found in the non-

conventional and non-generic arrangement of known, conventional pieces." *Id.* at 1350. The court found that "[t]he inventive concept described and claimed in the '606 patent is the installation of a filtering tool at a specific location, remote from the end-users, with customizable filtering features specific to each end user. This design gives the filtering tool both the benefits of a filter on a local computer and the benefits of a filter on the ISP server." *Id.*  Here, as in *Bascom*, an inventive concept can be found in the non-conventional and non-generic arrangement of method steps for managing an unconventional central relational database, using advanced digital data compression techniques to provide more realistic image rendition, rapid communication response time, and reduce server participation and communications costs.

The dependent claims also add additional limitations which are not abstract, and which contain inventive concepts beyond those recited in claim 1.  For example, claim 23 states "wherein the remote data terminal is a telephone." '412 Patent at 12:61-62.  At the time of the invention, the telephone of claim 23 was not generic, since it is widely known that smartphones capable of accessing the internet did not exist in the mid-1990s.[9]

### c.  The '412 Patent Satisfies The Machine-Or-Transformation Test

The Supreme Court noted the utility of the machine-or-transformation test in *Bilski*.  561 U.S. at 604.  "Simply put, '[a] claimed process is surely patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different

---

[9]   In one embodiment, the "telephone" of claim 23 is described as being a non-conventional, non-generic telephone having "video display capabilities, in anticipation of ***future*** 'video-phone' applications," wherein "[t]o facilitate this application, ***the telephones would be configured*** with additional RAM memory, EEPROMs, or local hard-disk drives. In addition, data compression software for the images would be added, as well as optional facilities for converting the associated text information into voice information, to be made available through the telephone handset. For these text information files, the data could be transmitted and stored as codes intended to facilitate local voice synthesis by electronic means, thereby minimizing the amount of data to be transmitted." '412 Patent at 10:30-46. Clearly, in this embodiment, the telephone is not generic, but is instead specific to the '412 Patent's invention.

26

state or thing.'"  *Id.* (quoting *In re Bilski*, 545 F.3d 943, 954 (Fed. Cir. 2008)).  While not the

only means through which a method claim can be vindicated, it "is a 'useful and important clue'

for determining patent eligibility."  *DDR Holdings*, 773 F.3d  at 1255 (quoting *Bilski*, 561 U.S. at

604).  District Courts have relied on this test for evaluating claims under step two of the

*Alice/Mayo* analysis.  For example, a court recently noted "[t]he claimed invention is directed to

a machine—a 'computing device comprising a display screen'—and . . . the limitations of the

claim make no sense outside the context of that specific machine."  *Core Wireless Licensing*

*S.A.R.L. v. LG Elecs., Inc.*, 2:14-cv-911-JRG-RSP, 2016 WL 1106438, at *4 (E.D. Tex. Mar. 20,

2016) (quoting *DDR Holdings*, 773 F.3d at 1255).  Tellingly, the claim language at issue in *Core*

*Wireless* was:

> A computing device comprising a display screen,
>> the computing device being configured to display on the screen a menu listing one or more applications,
>> and additionally being configured to display on the screen an application summary that can be reached directly from the menu,
>> wherein the application summary displays a limited list of data offered within the one or more applications,
>> each of the data in the list being selectable to launch the respective application and enable the selected data to be seen within the respective application,
>> and wherein the application summary is displayed while the one or more applications are in an un-launched state.

*Core Wireless*, 2016 WL 1106438 at *3.  The claims of the '412 Patent require specific physical

hardware—beyond even what was required for the *Core Wireless* patent to be held patent-

eligible.  *See, e.g.*, '412 Patent 11:5-12:24 ("uniquely identifiable remote data terminal," "central

computer managing a relational database," "a public telephone having a video display means," a

"user security key," "a first screen display of the requesting remote data terminal," and "a

telephone").

In addition to *Core Wireless*, courts have found patents with hardware limitations similar to those present in the '412 Patent—and in some cases, even less particular—patent-eligible under § 101.  Judge Stark in the District of Delaware held "the [patent] satisfies the machine-or-transformation test, which is an important clue that the claim includes an inventive concept and is not directed to patent-ineligible subject matter."  *Intellectual Ventures*, 100 F. Supp. 3d at 403.  The claim language at issue involved two claims, Claim 1 (an independent claim) and Claim 7 (which depended from Claim 1):

> [Claim 1:] A virus screening method comprising the steps of:
>           routing a call between a calling party and a called party of a telephone network;
>           receiving, within the telephone network, computer data from a first party selected from the group consisting of the calling party and the called party;
>           detecting, within the telephone network, a virus in the computer data; and
>           in response to detecting the virus, inhibiting communication of at least a portion of the computer data from the telephone network to a second party selected from the group consisting of the calling party and the called party.
>
> [Claim 7:] The virus screening method of claim 1 further comprising the step of determining that virus screening is to be applied to the call based upon at least one of an identification code of the calling party and an identification code of the called party.

*Id.* at 396.   Judge Stark noted that this claim satisfied the machine leg of machine-or-transformation test in that it "requires at least three computers configured in a specific manner." *Id.*  Like the patent at issue in *Intellectual Ventures*, the '412 Patent requires specifically configured hardware configured in a particular manner; and in both cases the claims are patent-eligible.  *Id.*

The '412 Patent is a technological invention.  It is an invention of the computer-age and the use of computers and technology are essential to digital recordings and manipulation of images and text data; it "is necessarily rooted in computer technology."  *See DDR Holdings*, 773

28

F.3d at 1257.  Importantly, the Federal Circuit recently admonished against pursuing a witch hunt against a patent's use of computers.  *See Enfish*, 822 F.3d 1327 ("[W]e are not persuaded that the invention's ability to run on a general-purpose computer dooms the claims."). Notwithstanding that the '412 Patent teaches a technological process, the analysis under the machine-or-transformation test and similar cases such as *Intellectual Ventures* and *Core Wireless* further supports a finding that the '412 Patent embodies an inventive concept.

In sum, the claims of the '412 Patent are not directed to the allegedly abstract ideas of 'displaying images' or 'buying and selling,' and even if they were, "as discussed [above], under any of these characterizations of the abstract idea, the '[412] patent's claims satisfy *Mayo/Alice* step two." *DDR Holdings*, 773 F.3d at 1257.

## IV.   CONCLUSION

This Court should deny Defendant's Motion for Judgment on the Pleadings as premature. Further, when viewed in the light most favorable to Voit, the '412 claims are directed to patent-eligible subject matter under 35 U.S.C. § 101 and the *Alice/Mayo* framework.

Voit therefore respectfully requests that this Court deny Defendant's Motion for Judgment on the pleadings in its entirety, or, if this Court were to interpret Defendant's Motion as one for summary judgment, then grant the parties leave to conduct discovery.

Dated: November 7, 2017.

Respectfully submitted,

/s/ David F. Tamaroff
**David F. Tamaroff, Esq.**
Fla. Bar. No. 92084
Email: dt@lipscombpartners.com
**LIPSCOMB & PARTNERS, PLLC**
25 SE 2nd Avenue, 8th Floor
Miami, Florida 33131
Tel: (786) 431-2326
Fax: (786) 431-2229

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on November 7, 2017, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF and that service was perfected on all parties or counsel of record, as indicated on the Service List below, through this system or some other authorized means.

By:     /s/ David F. Tamaroff
David F. Tamaroff, Esq.

## SERVICE LIST

**Joel B. Rothman, Esq.**
Email: joel.rothman@sriplaw.com
**Jerold I. Schneider, Esq.**
Email: jerold.schneider@sriplaw.com
**SCHNEIDER ROTHMAN INTELLECTUAL PROPERTY LAW GROUP, PLLC**
4651 North Federal Highway
Boca Raton, FL 33431
Telephone: (561) 404-4350
Facsimile: (561) 404-4353
*Counsel for Jacksonville Lighting & Electric Supply Co.*